IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division



GLOBAL BANKCARD SERVICES, INC., )
et al., )
    Plaintiff/Third Party Defendants, )
)
v. ) Civil Action No. 1:11-cv-00110 (IDD)
)
GLOBAL MERCHANT SERVICES, )
INC., )
)
    Defendant/Third Party Plaintiff. )
_____)

## MEMORANDUM OPINION

This matter is before the Court on the Third Party Defendants' Motion to Dismiss the Resubmitted First Amended Counterclaims and Third Party Complaint.[1]

### I.    STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must assert plausible facts that, if accepted as true, provide a basis on which relief may be granted. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This court must use its judicial experience and common sense to determine whether the facts stated present a plausible claim for relief. *Aschcroft*, 129 S. Ct. at 1949. Furthermore, a recitation of the elements of the claims and legal conclusions in a complaint are insufficient to satisfy the plausibility standard of pleading. *Ashcroft*, 129 S.Ct at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Since this case is based on the diversity of citizenship of the parties, the Court will look

---

[1] On May 12, 2011, Global Bankcard Services, Inc. and Kim filed an Answer to the Counterclaim and Third Party Complaint. Dkt. No. 52. As the motion to dismiss predates that Answer filed by the Third Party Defendants, the Court has not considered any of the contents of the Answer to the Counterclaim when making its decision; but rather, makes its decision based solely on the arguments set forth in the parties' briefs and oral argument.

to the substantive law of Virginia to determine whether there are sufficient facts to provide the Third Party Plaintiff, Global Merchant Services, Inc. ("GMS" or "GMS-Pennsylvania") with relief for its counterclaims.

## II. PROCEDURAL HISTORY

Global Merchant Services Inc. ("GMS-Virginia"), a Virginia Corporation trading as Global Data Services, initially filed suit against GMS, a Pennsylvania corporation, and others,[2] in Fairfax Circuit Court. Dkt. No. 1, Exh. A.[3] On February 1, 2011, GMS-Pennsylvania and the other Fairfax defendants filed a notice of removal in this Court. Dkt. No. 1. On February 28, 2011, GMS-Virginia, filed an amended complaint in this Court bringing claims against GMS-Pennsylvania for accounting, breach of contract, fraudulent inducement, fraud, and seeking injunctive relief from this Court. GMS-Virginia brought its claims in the amended complaint as a plaintiff and assignee of merchants listed in the caption of the amended complaint. First Am. Compl.

On March 4, 2011, GMS-Pennsylvania filed its first motion to dismiss, or in the alternative, to transfer venue to Pennsylvania. Dkt. No. 11. On the same day, GMS-Pennsylvania filed its answer to the amended complaint and filed a third party complaint against Yong Cheol Kim ("Kim"), a Virginia resident, as well as its first counterclaims against GMS-Virginia. Dkt. No. 14. On March 24, 2011, GMS-Pennsylvania filed an

---

[2] On February 28, 2011 and March 2, 2011, respectively, pursuant to voluntary dismissal agreements executed by the parties, the Honorable T.S. Ellis, III, entered orders dismissing the other defendants from the case. Dkt. Nos. 7, 9.

[3] It should be noted that on the complaint filed in Fairfax County Circuit Court and on the amended complaint filed with this Court, Global Merchant Services, Inc. ("GBS"), appears as the initial named plaintiff, trading as GDS and formally known as Global Bankcard Services (Dkt. No. 1, Exh. A; Dkt. No. 8). However, the Second Amended Complaint makes no mention of this history and simply names Global Bankcard Services, Inc. as the plaintiff to this action. Compl. The Counterclaim and Third Party Complaint refer to these entities, in a somewhat confusing fashion, as separate entities. For purposes of discussing the instant motion, this memorandum discusses GBS and GDS as separate corporate entities.

2

Amended Counterclaim against GMS-Virginia and Third-Party Claims against Kim. Dkt. No. 28; Compl. ¶ 16. On March 25, 2011, the Honorable T.S. Ellis, III granted the motion to dismiss filed by GMS-Pennsylvania and dismissed the amended complaint without prejudice. Dkt. No. 30. In his Order, Judge Ellis instructed GMS-Virginia to file a second amended complaint by April 4, 2011. Dkt. No. 30. Judge Ellis also dismissed, without prejudice, the counterclaims and third party complaint filed by GMS-Pennsylvania and required the Third Party Plaintiff to file an answer, counterclaims, and a third party complaint by April 15, 2011. Dkt. No. 30.

On April 4, 2011, GBS filed a Second Amended Complaint. Dkt. No. 31. GMS filed a motion to dismiss the Second Amended Complaint on April 13, 2011. Dkt. No. 34. On the same day, GMS-Pennsylvania re-filed its Answer to the Second Amended Complaint, which included counterclaims against GBS as well as a Third Party Complaint against Kim. Dkt. No. 37. On April 27, 2011, GBS and Kim filed this Motion to Dismiss the Resubmitted First Amended Counterclaim and Third Party Complaint. Dkt. No. 41. On May 12, 2011, the Third Party Defendants filed a notice of withdrawal of their Motion to Dismiss as to the aforementioned Counts. Dkt. No. 51.

On April 29, 2011, Judge Ellis heard argument on GMS's motion to dismiss the Second Amended Complaint and denied GMS's request for dismissal as well as its request for a realignment of the parties in this case. Dkt. No. 46. On the same day, Judge Ellis entered an Order referring the case, by consent of the parties, to the undersigned Magistrate Judge. Dkt. No. 47. On May 6, 2011, GBS and Kim filed a notice for hearing for their Motion to Dismiss setting the hearing for May 20, 2011. Dkt. No. 49. This Court convened a hearing on the motion to dismiss on May 20, 2011, and the

undersigned Magistrate Judge ruled on the motion, but informed the parties that this memorandum opinion and an order would issue.

### III. DISCUSSION

*A. Breach of Contract Claim (Count I)*

Under Virginia law, a party alleging breach of contract must show (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *Filak v. George*, 267 Va. 612, 594 S.E.2d 610, 614 (2004) (citing *Brown v. Harms*, 251 Va. 301, 467 S.E.2d 805, 807 (1996); *Fried v. Smith*, 244 Va. 355, 421 S.E.2d 437, 439, 9 Va. Law Rep. 298 (1992); *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 237 Va. 543, 379 S.E.2d 316, 317, 5 Va. Law Rep. 2268 (1989)).

GMS avers that it began placing advertisements in local newspapers to procure the services of independent sales agents to identify and recruit customers to use the credit card equipment and processing services that it provided from banks that authorized GMS to act as their independent sales office agent ("ISO"). CounterCl. ¶ 8. GMS alleges further that in Spring 2009, Kim responded to its advertisement seeking sales representatives to offer GMS's services to prospective customers in Northern Virginia. CounterCl. ¶ 9. According to GMS, Kim stated that he would discontinue his work with a competitor in the New Jersey market, United Merchant Services, and work for GMS on a full-time basis. CounterCl. ¶ 10.

GMS alleges that Kim agreed to accept the employment on the terms set forth in GMS's standard agent agreement ("Employment Agreement"), a copy of which GMS provided to Kim. CounterCl. ¶ 10. This Employment Agreement provided the terms and

conditions for employment as a sales representative, including the commission that would be paid to Kim for his services. CounterCl. ¶ 10. Under the Employment Agreement, Kim would receive a fixed percentage of the processing fees that GMS received from banks for those customers that Kim procured. CounterCl. ¶ 10. The Employment Agreement also included non-disclosure, non-competition, and non-solicitation provisions that GMS alleges were binding on Kim. CounterCl. ¶ 10. GMS alleges that Kim accepted employment after he acknowledged the terms of employment set forth in the Employment Agreement. CounterCl. ¶ 11. GMS further alleges that Kim agreed to sign the Employment Agreement upon his next visit to GMS's offices. CounterCl. ¶ 11.

The Third Party Defendants contend that Kim is not bound by an Employment Agreement that he did not sign, particularly when the unexecuted writing provides that it supersedes all oral agreements made prior to or during the agreement. Third Party Defs.' Mot. Dismiss 4 ("Motion to Dismiss"). They contend that an agreement to agree is not enforceable under Virginia law, and therefore, facts pleaded that suggest that Kim agreed to agree to the Employment Agreement fail to establish that he did in fact agree to said agreement. *Id.* The Third Party Defendants also argue that the attached unexecuted Employment Agreement contradicts GMS's assertion that Kim agreed to accept employment under the Employment Agreement because the unexecuted document contradicts GMS's allegation in its Third Party Complaint. *Id.*

The Third Party Defendants' arguments fail for two reasons. First, GMS states that in Spring 2009, Kim responded to its advertisement seeking sales representatives for merchant customer recruitment in Northern Virginia. GMS alleges that Kim stated that he would discontinue his work with a competitor in the New Jersey Market, United

5

Merchant Services, to work full time for GMS. CounterCl. ¶ 10. Furthermore, the Third Party Complaint states that Kim agreed to accept the employment on the terms set forth in GMS's Employment Agreement, a copy of which GMS provided to Kim. CounterCl. ¶ 10. These facts are not contradicted by the unexecuted Employment Agreement attached to the Third Party Complaint. In fact, they are entirely consistent with the fact that the agreement attached to the Counterclaim was not signed by Kim.

Second, these facts indicate more than an agreement to agree. GMS is alleging that Kim had a verbal agreement with GMS for acceptance of full time employment with GMS on the terms set forth in the Employment Agreement, which he promised to sign when visiting GMS's office. GMS has alleged that the Employment Agreement, which Kim acknowledged and understood governing his employment, contained non-competition and non-solicitation provisions. CounterCl. ¶¶ 14, 16, 17, 18, 26. GMS alleges further that Kim breached this agreement by soliciting existing GMS customers to conduct their business with GBS. GMS further alleges that it has suffered damages in excess of $100,000 as a result of Kim allegedly diverting fees owed to it under Merchant Agreements to GBS. CounterCl. ¶ 26. Therefore, GMS has pleaded sufficient facts to support its counterclaim that Kim breached the employment agreement between GMS and Kim.

Paragraph one of the Mutual Confidentiality Agreement ("MCA") governs non-disclosure and provides, among other things, that the "[r]eceiving [p]arty shall not use any Confidential Information for any purpose except to evaluate the possible business transactions." Dkt. No. 37, Exh. 2. Paragraph two of the MCA defines "Confidential Information" as any information disclosed to or learned by the receiving party that

6

pertains to any business of the disclosing party or its affiliates, subsidiaries, business consultants, or associates. Dkt. No. 37, Exh. 2. The section also expressly states that "confidential information" includes customer lists. Dkt. No. 37, Exh. 2. GMS alleges that Kim, while employed by GMS, converted GMS customers to GBS and secured paperwork from pre-existing customers to have processing fees owed to GMS under Merchant Agreements instead paid to GBS. CounterCl. ¶ 18.

GMS has not expressly stated the exact provisions of the MCA that Kim has violated. Furthermore, it has not explicitly identified the information that it deemed confidential or the manner in which Kim allegedly used such information in violation of the non-disclosure provision of the MCA. However, this Court finds that GMS has pleaded sufficient facts to put the Third Party Defendants on notice of the basis of its claims because it has attached the MCA and generally described the alleged improper conduct engaged in by Kim in violation of the MCA. Even under the *Iqbal* standard regarding a 12(b)(6) motion to dismiss, Rule 8 is still a notice pleading provision and a party's allegations need not be put to proof at the pleading stage. *See Iqbal*, 129 S. Ct. at 1949 (stating that "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully")(internal citations and quotations omitted). For these reasons, this Court will deny the motion to dismiss GMS's breach of contract claim against Kim as it relates to the MCA.

**B.**   ***Fraud (Count II)***

In Virginia, a party asserting a fraud claim must allege (1) a false representation (2) of a material fact (3) made intentionally and knowingly (4) with the intent to mislead (5) reliance on the false representation, and (6) that such reliance resulted in damage to the misled party. *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994). Virginia courts have determined that where no independent duty apart from the contract exists at common law, then the cause of action sounds in contract and not in tort. *Richmond Metro Auth. V. McDevitt St. Bovis*, 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998). The courts have indicated that under particular circumstances, a single act or occurrence may support claims for both breach of contract and for a duty arising in tort. *Kaltman v. All Am. Pest Control, Inc.*, 281 Va. 483, 491-93, 706 S.E.2d 864, 869 (2011). However, the Supreme Court of Virginia has indicated that such occurrence happens when the party alleges that the fraudulent conduct occurred before the contract between the parties came into existence or where the other party had a duty arising under statute or common law. *Id.*

GMS cites to *Mortarino v. Consulting Eng'g Servs.*, Inc. 251 Va. 289, 294, 467 S.E.2d 778, 782 (1996) for the proposition that a fraud claim can be brought in connection with the formation of or during the course of a contractual relationship. Mem. Opp. 6. In *Mortarino*, the Supreme Court of Virginia held that the trial court erred when it granted defendants' demurrer based on the fact that statements made to plaintiff about the existence of wetlands on the property, the lack of which was a condition to the agreement, were statements of fact and not opinion as the defendants asserted in their demurrer. *Id.* Ultimately, the court affirmed the lower court's ruling that the plaintiff failed to plead with particularity the facts giving rise to a claim for constructive fraud. *Id.*

8

In this case, GMS has failed to plead facts that allege that a duty not to solicit a company's employees while employed by such company exists in common law or arises out of a Virginia statute. Accordingly, Kim's duty to GMS arises solely from the duty created by his Employment Agreement. As a result, this Court will grant the motion to dismiss Count II of the Counterclaims and Third Party Complaint.

### C.  *Conversion (Count III)*

In Virginia, a party bringing claims for conversion must allege facts that show any wrongful exercise or assumption of authority over another's goods, depriving him of their possession as well as any act of dominion wrongfully exerted over property in denial of the owner's rights. *Hewlette v. Hovis*, 381 F.Supp.2d 332, 336 (E.D. Va. 2004)(internal citations omitted).

GMS alleges that Kim obtained paperwork from pre-existing GMS customers that enabled him "to have processing fees that were earned by and should have gone to the accounts of GMS," instead diverted into the accounts of entities established by Kim. CounterCl. ¶ 18. GMS alleges further that Kim and GBS diverted funds into the accounts of GBS and/or GDS in excess of $100,000 in fees that were owed to GMS from pre-existing customers. CounterCl. ¶ 26.

In *Combined Insurance Co. of America v. Wiest*, 578 F.Supp.2d 822, 835 (W.D. Va. 2008), the court explained that the tort of conversion usually applies only to tangible property, but may apply in cases involving intangible property where the rights to the intangible property arise from or are merged with a document. The court held that the plaintiff's conversion claim did not fail where plaintiff alleged that defendant sent an electronic version of plaintiff's confidential, proprietary list of prospective recruits to his

personal e-mail account and then used the list to solicit clients for another organization. *Id.*

In *PGI, Inc. v. Rathe Prods., Inc.*, 265 Va. 334, 344, 576 S.E.2d 438, 443 (2003), the Supreme Court of Virginia upheld the jury's verdict on plaintiff's conversion claim where the defendant failed to pay plaintiff monies it received in the settlement of a debt owed to both parties as partners in a joint venture. The court stated that "the jury was entitled to find that [defendant] without justification wrongfully withheld settlement proceeds from [plaintiff]. None of the elements to sustain a cause of action for conversion are missing." *Id.*

Following the courts' reasoning in *PGI, Inc.*, and *Weist*, this Court finds that GMS has pleaded sufficient facts to support a conversion claim against Kim. If pursuant to the Merchant Agreements, GMS was entitled to the fees that Kim diverted to GBS, then such facts support an allegation that Kim wrongfully exerted dominion over property belonging to GMS, and thus denied GMS of its rights to the fees it was entitled to receive. Still, an issue remains as to whether the Counterclaim states sufficient facts to support GMS's conversion claim against GBS.

According to a treatise on Virginia law, if goods have been delivered to a party under a mutual mistake of fact and the party converts the property for its own use but later discovers that the goods belong to another, then the party will be liable to the owner for the value of the property. 19 T. T. Whiteley et al., Michie's Jurisprudence of Virginia & West Virginia, Trover and Conversion § 4 (Lexis 2010).

GMS asserts that in paragraph eighteen of the Complaint, GBS admits that it converted merchants to direct agreements with GDS. Mem. Opp. 7. GMS posits that it

was by those "converted" agreements that GBS converted fee revenue to which GMS was entitled. Mem. Opp. 8. GMS's argument is problematic because it's clear from a reading of the Complaint that the word "converted" is used to mean changed. In its Answer, GMS states that it is without specific knowledge to admit or deny the allegations contained in paragraph eighteen of the Complaint. CounterCl. ¶ 18. GMS states further that it believes that Plaintiff engaged in the conduct alleged, but that the merchants never terminated their agreements with GMS. CounterCl. ¶ 18.

GMS has failed to allege sufficient facts to support a plausible conversion counterclaim against GBS. GMS has not alleged facts that demonstrate that GBS knew or discovered that the credit card processing fees it received were connected to the Merchants' pre-existing contracts with GMS and as such should have been deposited with the latter. GMS has also failed to allege that GBS then used these funds for its own purposes and failed to pay them to GMS. For these reasons, the Third Party Defendants' motion to dismiss shall be granted as to the conversion counterclaim against GBS.

### D. *Unfair Competition (Counts IV and V)*

A plaintiff successfully brings claims for trademark infringement and unfair competition, and dilution under §§ 1114 and 1125(a), and (c) of the Lanham Act, where the plaintiff demonstrates that (1) it possessed the mark; (2) the defendant used the mark in commerce; (3) such use was in connection with the sale, offering for sale, distribution or advertising of goods and services; and (4) that defendant's use is likely to confuse consumers. *Lamparello v. Falwell*, 420 F.3d 309, 312-13(4th Cir. 2005), *cert denied*, 547 U.S. 1069 (2006). A party specifically alleging a claim for false designation under the Lanham Act must establish that "(1) the defendant uses a designation; (2) in interstate

11

commerce; (3) in connection with goods or services; (4) which designation is likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval of defendant's goods or services; and (5) plaintiff has been or is likely to be damaged by these acts." *Am. Online v. LCGM, Inc.*, 46 F.Supp.2d 444, 449 (E.D. Va. 1998). The analysis for a trademark infringement claim under Virginia common law is the same as the analysis for federal trademark infringement claims. *Lone Star Steakhouse & Saloon Inc., v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995)(internal citations omitted).

GBS contends that Virginia courts adhere to a very narrow definition of unfair competition, namely that it is "deception by means of which goods of one dealer are palmed off as those of another." Mot. Dismiss 7. GBS relies on this Court's opinion in *Monoflo Int'l, Inc. v. Sahm*, 726 F.Supp. 121, 127 (E.D. Va. 1989), for its interpretation of the definition of "unfair competition" under Virginia law. Mot. Dismiss 7. However, the Court in *Monoflo*, cites Virginia case law that demonstrates that the analysis for unfair competition is one that focuses on proof of the likelihood of confusion between the two trademarks. *Monoflo Int'l, Inc. v. Sahm*, 726 F.Supp. 121, 127 (E.D. Va. 1989)(citing *Rosso & Mastracco, Inc. v. Giant Food Shopping Ctr.*, 200 Va. 159, 165 (1958)). Therefore, the Court's analysis in *Monoflo* is one that focuses on the likelihood of confusion between the two trademarks, and this Court rejects GBS's limited definition of "unfair competition."

In any event, were this Court to accept GBS's interpretation, it would still find that GMS has pleaded sufficient facts to support its trademark infringement claim against the Third Party Defendants. GMS has alleged that GBS, GDS, and Kim have misled

customers about the source and origin of the services the customers were obtaining when transacting with the Third Party Defendants, and that the Third Party Defendants led customers to believe they were contracting with GMS. CounterCl. ¶¶ 16, 29. Therefore, GMS has pleaded sufficient facts to support its common law unfair competition claim against the Third Party Defendants.

GBS and Kim further argue that GMS's Lanham Act counterclaim should fail because GMS has failed to allege facts to show that Kim and GBS took actions that falsely designated the origin of their services. Mot. to Dismiss 7. Specifically, GBS and Kim assert that the claim fails because GMS has failed to allege any facts pertaining to interstate commerce. Mot. to Dismiss 7.

In *America Online v. LCGM*, this Court ruled in favor of the plaintiff on its summary judgment motion where the facts indicated that all the emails containing the designation were sent to plaintiff's customers via routing from defendant's computers in Michigan through plaintiff's computers in Virginia. 46 F.Supp.2d at 449. In *Microsoft Corp. v. Computer Serv. & Repair, Inc.*, 312 F.Supp.2d 779, 785 (D. N.C. 2001), the court held that the plaintiff satisfied the "in interstate commerce" provision of the Lanham Act where the facts demonstrated that defendant distributed products using plaintiff's trademarks and plaintiff was a large corporation with distribution in all 50 states.

GMS has alleged sufficient facts in connection with its Lanham Act claim to survive a 12(b)(6) motion to dismiss. In its counterclaim, GMS does not expressly allege that GBS and Kim used the designation to solicit clients in Virginia, Washington, D.C., and Maryland. *See* CounterCl. However, GBS states in its Compliant that it conducts

business with merchants in the "Commonwealth of Virginia and surrounding jurisdictions." Compl. ¶ 1. These business transactions form the basis of GMS's Lanham Act claims as GMS has alleged that GBS, GDS, and Kim used the "GMS" name when transacting business with customers. CounterCl. ¶¶ 16, 28, 31. Therefore, GMS has pleaded facts sufficient to show that the Third Party Defendants allegedly used the "GMS" mark in interstate commerce. The Third Party Defendants' motion to dismiss shall be denied as to Counts IV and V of the Counterclaim and Third Party Complaint.

### E. *Combination to Injure (Count VIII)*

GMS asserts a claim against the Third Party Defendants, pursuant to Virginia Code § 18.2-500, for acting in concert to allegedly cause damage to GMS's business. CounterCl. ¶¶ 40-43. The Counterclaim and Third Party Complaint specifically states that Kim "acted willfully and maliciously both in forming GDS and then acting in combination with it and GBS to steal GMS's customers, for the purpose of causing injury to GMS . . . ." CounterCl. ¶ 41. The allegation is ambiguous. It could be read as Kim acting in combination with GDS and Kim acting in combination with GBS, but not GDS and GBS acting in concert with each other. Alternatively, the allegation could be read as Kim acting in combination with both GBS and GDS in one single conspiracy. The Court addresses each interpretation of the allegation in turn.

Pursuant to the Virginia Code, civil relief may be provided where one is injured by "any two or more people who combine, associate, agree, mutually undertake or concert together for the purpose of (1) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever . . ." Va. Code Ann. §§ 18.2-499, 18.2-500. Generally, under Virginia's intra-corporate immunity doctrine, a

corporation cannot conspire with its own employees, agents, or officers as this would be a legal impossibility because a corporation is a legal fiction. *Buffalo Wild Wings Factory, Inc. v. Mohd*, 622 F.Supp.2d 325, 335-36 (E.D. Va. 2007). However, an exception to the doctrine provides that "if an employee, officer, or agent, has an independent personal stake in the conspiracy or where the aforementioned engages in activity not authorized by the corporation, a conspiracy with the corporation may be found. *Id.* (internal citations omitted). The employee must have an independent stake in achieving the corporation's illegal objective. *Greenville Pub. Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 400 (4th 1974). A plaintiff fails to allege facts sufficient to fall within the intra-corporate immunity doctrine exception where it only alleges facts demonstrating that the person was acting within the scope of his employment in the alleged conspiracy. *See Doughty v. Irwin Mortg. Corp.*, 70 F.Supp.2d 626, 632 (E.D. Va. 1999).

In *Greenville Pub. Co.*, the Fourth Circuit found that the defendant's employee had an independent stake in eliminating the plaintiff competitor where he received a commission for advertising revenues from a different competitor in the same market. 496 F.2d at 400. GMS asserts that Kim's employment with GMS provided him with an independent interest in furthering an alleged conspiracy with GBS. Mem. Opp. 13. The alleged conspiracy is that GBS and GDS conspired with Kim to use the "GMS" name to procure contracts for credit card processing fees with merchants. CounterCl. ¶ 41. GMS's argument must fail because Kim could only receive a commission from GMS for the merchants he recruited to contract with GMS. Therefore, a conspiracy to use the "GMS" name to procure merchants to enter agreements with GBS and GDS, would not provide Kim with any benefit independent from GMS because he would receive no

commission for such contracts. Absent this argument, there are no facts to indicate that Kim would not be acting within the scope of his employment with both GBS and GDS when recruiting customers to enter agreements with those companies. Therefore, the intra-corporate immunity doctrine applies.

For similar reasons, this Court finds that Count VIII must also fail as to any alleged conspiracy between GBS and GDS. A corporation is a fictitious legal entity and GMS has failed to identify a person within the GDS corporation that Kim allegedly conspired with to divert merchants away from GMS and to GDS or GBS. A person cannot conspire with himself. Therefore, the Court shall grant the motion to dismiss as to Count VIII.[4]

### F. *Virginia Computer Crimes Act Claims (Count IX)*

The Virginia Computer Crimes Act provides that "any person who uses a computer or computer network without authority and with intent to convert the property of another shall be guilty of the crime of computer fraud. Va. Code Ann. § 18.2-152.3(3). A plaintiff may be successful on a claim under the Act where the plaintiff alleges that the defendant intended to obtain services by false pretenses and to convert plaintiff's property. *Am. Online*, 46 F.Supp.2d at 451.

For the reasons articulated in the discussion regarding GMS's conversion claims, and because GMS alleges that Kim utilized computer systems to create and alter financial

---

[4] Alternatively, entities "that share common ownership or control are incapable of conspiracy." *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 376 F.Supp.2d 617, 652 n.90 (E.D. Va. 2005)(citations omitted) *rev'd* on different grounds, 562 F.3d 295, 297 (4th Cir. 2009). GMS has alleged that GDS is a Virginia corporation formed by Kim in 2009. CounterCl. ¶ 15. The Counterclaim and Third Party Complaint also states that Kim organized GBS in 2008 under the laws of Virginia. CounterCl. ¶ 15. Further, GMS alleges that "Kim caused GDS to assign customers' rights and obligations to his other company, GBS." CounterCl. ¶ 16. GMS also alleges that Kim's conduct provided for the diversion of credit card processing fees from GMS into the accounts of GDS and/or GBS. CounterCl. ¶ 18. The facts pleaded in the Counterclaim illustrate that GDS and GBS were both controlled and owned by Kim. Therefore, the intra-corporate immunity doctrine could also apply under this theory.

documents when transferring funds that allegedly belonged to GMS (CounterCl. ¶ 45), this Court will deny the motion to dismiss Count IX as to Kim and grant it as to GBS.

### G. *Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count X)*

GBS contends that GMS has not indicated the subsection of the Computer Fraud and Abuse Act ("Act"), 18 U.S.C. § 1030, under which it brings its claim. Mot. Dismiss 11. GMS contends that the Act mirrors the Virginia Computer Crimes Act, and in that regard, alleges in its Opposition that it brings its claims under § 1030(a)(5)(B) of the Act. Subsection (a)(5)(B) provides that whoever intentionally accesses a protected computer without authorization, and as a result of such conduct recklessly causes damage shall be guilty of a crime and subject to civil liability by a damaged party. 18 U.S.C. § 1030(a)(5)(B).

A review of the statute does not reveal any provision that provides that it is unlawful to use a computer or computer system to convert the property of another. *See* 18 U.S.C. § 1030. In fact, there does not to appear to be any subsection of § 1030 that expressly states the words "divert" or "convert." Therefore, GMS has failed to plead its claim in a manner that sufficiently puts GBS and Kim on notice of the claims brought against them under the Act. Accordingly, this Court shall grant the Third Party Defendants' motion to dismiss in regard to Count X of.

An appropriate Order will issue.

/s/
Ivan D. Davis
United States Magistrate Judge

June 7, 2011.

17